# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| **Sharon Wies,** | Civil No. 08-6434 (DSD/JJG) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| **Michael Astrue,** | |
| Defendant. | |

JEANNE J. GRAHAM, United States Magistrate Judge

This litigation comes before the undersigned on the parties' cross motions for summary judgment (Doc. Nos. 16, 22). Jennifer G. Mrozik, Esq., is representing plaintiff Sharon Wies. Lonnie F. Bryan, Assistant United States Attorney, is representing defendant Michael Astrue, the Commissioner of the Social Security Administration. The motions are referred to this Court for a report and recommendation in accordance with 28 U.S.C. § 636(b) and Local Rule 72.1(a).

Ms. Wies (Wies) filed for disability benefits from the Social Security Administration (the SSA) on October 14, 2005. Among other impairments, she asserted that she suffered pain and physical limitations caused by degenerative disc disease, citing two prior surgical procedures on her cervical spine. After the SSA denied her application initially and upon reconsideration, Wies requested a hearing before an Administrative Law Judge (ALJ). In a decision on April 14, 2008, the ALJ ruled that Wies was not disabled and denied benefits.

Wies then brought this action for judicial review, arguing that the ALJ made unsupported findings about her impairment and her ability to work. The parties now bring cross-motions for summary judgment.

I.   BACKGROUND

The first events material to this litigation date from April 2001.  Wies told her physician she had pain in the left side of her neck, which radiated into her left shoulder and arm and caused numbness in her hand.  (*See* Tr. at 232.)  For this reason, Wies was referred to an orthopedist, Dr. Richard Gregory.  After examining Wies and reviewing a radiological scan of her cervical spine, Gregory found a bulging disc.  (Tr. at 193-94, 197.)

Gregory then proposed surgery, consisting of a decompression of the disc followed by the fusion of two cervical vertebrae.  Wies agreed and received the procedure on May 8, 2001.  (Tr. at 174, 192.)

Wies had her first follow-up visit with Gregory on June 22, 2001.  In notes from the visit, Gregory opined that the site of the surgery "looked good."  He anticipated that in three months, Wies would be able to lift up to ten pounds; and that by six months, she would be able to lift up to twenty-five pounds, observing that the latter "should ideally be a life-long limit."  (Tr. at 169.)

At ensuing visits to Gregory on September 10, 2001 and October 24, 2001, Wies reported no concerns aside from soreness in her neck.  Gregory determined that the surgery was healing well but continued to recommend the ten-pound lifting restriction.  (Tr. at 169-70.)

But at their following visit on February 2, 2002, Wies reported pain in the right side of her neck, radiating through her shoulder and arm.  The changes prompted Gregory to order some additional radiological scans of Wies' cervical spine.  (Tr. at 172.)  Reviewing the scans during a visit on March 6, 2002, Gregory found that the fusion had failed and proposed a second surgery.  (Tr. at 173.)  That procedure took place on April 9, 2002.  (Tr. at 164, 189-90.)

When Wies returned on May 29, 2002, Gregory observed that she was "doing quite well" and displaying no symptoms.  (Tr. at 205.)  The trend continued at a visit on July 12, 2002, and

Gregory further noted, "[Wies] can lift up to 10 lb." (Tr. at 204.) Following their next visit on October 2, 2002, Gregory opined, "[Wies'] fusion appears to be pretty solid . . . . I think at this point we could consider [Wies] to be healed and she is going to return [as needed] depending on how things go." (Tr. at 202.) The record has no indication that Wies visited Gregory thereafter.

Wies did not report any other spinal complaints until she visited Dr. Lisa Livingston, who is apparently Wies' primary care physician, for a routine physical on June 29, 2004. Wies stated that she had low back pain and numbness in one leg. Livingston noted that, due to Wies' history of spinal surgery, "lifting is quite limited." Livingston also added, "[Wies] does have to limit her exercise although she walks daily and bikes regularly." (Tr. at 227.)

To further diagnose the back pain, Livingston referred Wies for a radiological scan of her lumbar spine, which took place on June 30, 2004. The scan revealed mild disc degeneration but no significant nerve compression. (Tr. at 241.) Wies did not take further action on this issue. When she next visited Livingston on February 3, 2005, she did not report back pain, but instead asserted that she was walking regularly. (Tr. at 226.)

Wies applied for SSA disability benefits on October 29, 2005. In her ensuing reports to SSA staff, Wies claimed that her disability started in May 2002. Among other conditions, Wies asserted that because of her spinal surgeries, she could lift no more than ten pounds. (Tr. at 97.)

At another routine physical with Livingston on December 29, 2005, Wies reported some pain in the right side of her neck and right arm. Livingston noted, "[Wies] is able to manage her symptoms okay at this point and will [let] me know if these symptoms are getting worse." (Tr. at 304.)

Dr. Cliff Phibbs, an non-examining physician, completed a forensic evaluation of Wies' condition on January 9, 2006. From a review of Wies' medical records, Phibbs opined that she

could occasionally lift up to fifty pounds and frequently lift up to twenty-five pounds. Based on the fact that Gregory found Wies to be fully healed in October 2002, Phibbs found that the prior ten-pound lifting restriction no longer applied. Phibbs further determined that, because the June 2005 radiological scan only showed mild disc degeneration in the lumbar spine, that concern did not merit further lifting restrictions. (Tr. at 313-14.)

In a pain questionnaire on March 3, 2006, Wies reported that she had significant pain in her arms, shoulders, and lower back. On her level of activity, Wies indicated that she engaged in most household chores—although these activities increased her pain—as well as occasional use of a riding lawn mower. She added that she could not lift over ten pounds or walk more than six blocks without resting. (Tr. at 124-25, 129, 132, 134-35, 137.)

Wies' application for benefits was denied initially and on reconsideration, and as a result, she requested a hearing before an ALJ. While awaiting this hearing, Wies visited Livingston on February 8, 2007. The exam note from this visit is the last germane medical record here. At this visit, Wies did not report neck, back, or shoulder pain, and Livingston stressed the importance of regular exercise. (Tr. at 343.) Thus the record indicates that, while her application for disability was pending, Wies did not seek further treatment for back pain.

The hearing took place before the ALJ on January 22, 2008. Wies testified that, since her second surgery, she could not lift more than ten pounds. She added that she had difficulty sitting for any extended period, and that she suffered from arm and shoulder pain most of the time. For her daily activities, Wies said that she did a few household chores but no outdoor work, and that she could walk three to five blocks but did not regularly exercise. (Tr. at 24-26, 28-29.)

The ALJ also received testimony from Robert Brezinski, a vocational expert. The ALJ asked Brezinski to assess what employment was available, to a person with Wies' work history,

4

and these limitations: standing or walking for six hours of an eight-hour workday with postural limitations; and lifting up to twenty pounds occasionally and ten pounds frequently. Brezinski determined that such a person could work as a cashier, assembler, mail clerk, or short order cook. (Tr. at 34-35.)

In the ensuing decision of April 14, 2008, the ALJ ruled that Wies was not disabled and could work. The ALJ held, in material part, that Wies was capable of a light exertional level of work with certain postural limitations. (Tr. at 11-12, 14.) Pursuant to SSA regulations, this level of work means "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds." 20 C.F.R. § 404.1567(b).

The ALJ cited several facts to support this determination. At the June 22, 2001 visit after the first surgery, Gregory anticipated that once Wies fully healed, she would be able to lift up to twenty-five pounds. After the second surgery, Gregory imposed a ten-pound limit. And though he never expressly lifted that limit, other circumstances indicate that Wies fully healed. The ALJ further observed that, after the second surgery, Wies did not report back pain to Gregory. Wies did not take further action on the low back pain she reported in June 2004, and she otherwise had not reported significant back pain to her medical providers since April 2002. (Tr. at 12-13.)

Wies then appealed to the Appeals Council of the SSA, which made some nonsubstantive modifications to the April 14 decision but otherwise denied the appeal. (Tr. at 1-2, 16.) As a result, Wies now seeks this judicial review.

## II.   ANALYSIS

### A.   Standard of Review

In their cross-motions for summary judgment, the parties dispute whether the ALJ had substantial evidence to support the findings regarding Wies' ability to work. Wies argues that

the ALJ improperly discounted opinions from Wies' treating physicians, and had this evidence been fully considered, the ALJ would have determined that Wies was unable to undertake light work. The Commissioner counters that there is substantial evidence for the ALJ to conclude that Wies was capable of light work.

On review of the decision of an ALJ regarding social security benefits, a court examines whether the findings of the ALJ are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 821 (8th Cir. 2008). Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (quotation omitted).

When assessing whether there is substantial evidence, a court must consider evidence that supports, and that which contradicts, the factual findings of the ALJ. *Hartfield v. Barnhart*, 384 F.3d 986, 988 (8th Cir. 2004). Those findings are not subject to reversal just because substantial evidence may also support another outcome. If it is possible to draw differing conclusions from the record, but one of those conclusions supports the findings by the ALJ, those findings must be affirmed. *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005).

### B. Evidence from Treating Physicians

Wies argues in part that the ALJ did not give enough weight to evidence from her treating physicians. She focuses on the fact that, after the second surgery, Gregory imposed a ten-pound lifting restriction and never lifted it thereafter. Wies contends that in light of this restriction, the ALJ could not find her capable of light exertional work, which contemplates lifting weights up to twenty pounds.

The rule is that opinions from a treating or examining physician are entitled to substantial weight. But such opinions do not have conclusive weight and must be supported by acceptable clinical or diagnostic data. *Forehand v. Barnhart*, 364 F.3d 984, 986 (8th Cir. 2004).

There are several scenarios where an ALJ may properly give less weight to the opinion of a treating physician. For instance, the opinion may receive less weight where it is contradicted by the physician's own findings elsewhere in the record, *Gonzales v. Barnhart*, 465 F.3d 890, 896 (8th Cir. 2006), or by other evidence of the claimant's activities, *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006).

Wies argues that, because Gregory limited her to lifting no more than ten pounds after her second surgery, the ALJ could not find that she could lift more than that. But there is relevant evidence, from Gregory's notes and elsewhere in the record, that reasonably supports the ALJ's finding that Wies could occasionally lift up to twenty pounds.

In his June 22, 2001 exam note after the first surgery, Gregory contemplated that once Wies was fully healed, she should lift no more than twenty-five pounds. Thus the ALJ could reasonably infer that, once Wies recovered from the second surgery, she would have similar capabilities. The record also indicates that Gregory imposed the ten-pound limit while Wies was convalescing from the second surgery. So the ALJ could further infer that, once Wies healed, this stringent limit was no longer necessary—even though Gregory did not expressly revisit the limit.

From other evidence of Wies' activities, the ALJ also had reason to conclude that, once Wies recovered from the second surgery, she engaged in activities that exceeded the ten-pound limit. For instance, there is evidence that Wies engaged in a wide range of activities, including use of a riding lawnmower. And once she fully recovered, Wies never sought ongoing treatment

7

for chronic back pain or weakness. Assuming for the sake of argument that Gregory intended a permanent ten-pound limit, the ALJ had cause to give this limitation less weight, based on other evidence of Wies' activity.

Contrary to what Wies argues here, the record does not necessarily establish that Gregory intended a permanent ten-pound limit. And there is other evidence to show that Wies engaged in activities beyond that limit. The ALJ granted appropriate weight to opinions from Gregory, and to the extent the ALJ made findings to the contrary, those findings are supported by substantial evidence.

**C.     Ability to Work; Modified Residual Functional Capacity**

Wies also challenges the ALJ's findings about her residual functional capacity (RFC), or in more practical terms, the findings regarding her ability to work. As discussed beforehand, the ALJ determined that Wies was capable of a light exertional level of work, with some additional postural limitations. In effect, the ALJ found that Wies could lift twenty pounds occasionally and ten pounds frequently. Wies essentially argues that the ALJ did not have enough evidence to make this finding.

The critical evidence here, once again, is Gregory's June 22, 2001 exam note. He opined that, when Wies recovered, she should lift no more than twenty-five pounds. With regard for this limitation, the ALJ determined that light exertional work was appropriate. This meant that Wies was only occasionally expected to lift weights up to twenty pounds, and nothing more than that. These duties are within the limits of the June 22 exam note, and they are consistent with other evidence regarding Wies' activities.

Wies' medical providers never directly assessed what she could lift, and for this reason, the record does not supply much evidence regarding her ability to perform light work. But the

standard of review here only requires relevant evidence as is adequate to support the findings by the ALJ. When the June 22 note and other evidence of Wies' activity and medical concerns are considered, there is relevant and reasonable evidence to support the findings of the ALJ on Wies' ability to work. This Court concludes that, when the ALJ found Wies capable of light work with some postural limitations, that finding was supported by substantial evidence.

Wies also argues that the ALJ should not have accepted certain testimony from Brezinski, the vocational expert. She contends that the ALJ should have rejected testimony about light jobs and instead considered testimony about sedentary jobs.

The ALJ had substantial evidence to find that Wies was capable of light exertional work with some postural limitations. At the hearing, the ALJ asked Brezinski about the availability of such work for a person with Wies' employment history, and Brezinski described several jobs that were available. Because the ALJ ultimately determined that Wies was capable of light exertional work, the ALJ had no reason to consider evidence on the availability of sedentary jobs. For this reason, Wies' argument is unavailing.

### III. CONCLUSION

Wies argues that the ALJ improperly discounted the opinions of her treating physicians. But the ALJ made reasonable inferences from the evidence and did not expressly reject any of those opinions. Assuming that less weight was given to any of the treating physicians' opinions, the ALJ had reason to do so, based on other evidence of Wies' activities.

The ALJ otherwise had substantial evidence to find Wies was capable of certain forms of light work. For this reason, the decision of the ALJ is properly affirmed and the parties' motions should be decided accordingly. Being duly advised of the all files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

1. Wies' motion for summary judgment (Doc. No. 16) be **DENIED.**

2. The Commissioner's motion for summary judgment (Doc. No. 22) be **GRANTED.**

3. This litigation be **DISMISSED WITH PREJUDICE.**

Dated this 19th day of January, 2010.

    s/ *Jeanne J. Graham*
JEANNE J. GRAHAM
United States Magistrate Judge

## NOTICE

Pursuant to Local Rule 72.2(b), any party may object to this report and recommendation by filing and serving specific, written objections by **February 2, 2010**. A party may respond to the objections within ten days after service thereof. Any objections or responses filed under this rule shall not exceed 3,500 words. The district court judge shall make a de novo determination of those portions to which objection is made. Failure to comply with this procedure shall forfeit review in the United States Court of Appeals for the Eighth Circuit.